**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Florina Ortega-Morales; Marcela Ortega-Morales, | No. CV-14-02024-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Loretta Lynch, U.S. Attorney General, et al., | |
| Defendants. | |

Plaintiffs seek a *de novo* determination of the Court pursuant to 8 U.S.C. § 1503(a) as to whether they are United States citizens. Before the Court is Defendants' Motion to Dismiss (Doc. 14). For the reasons that follow, the motion will be granted in part and denied in part.

I.      **BACKGROUND**

Plaintiffs Florina Ortega-Morales and Marcela Ortega-Morales are sisters born in Mexico in 1963 and 1968, respectively. Their father was a United States citizen. They reside in Phoenix, Arizona.

On August 6, 2012, Plaintiffs filed N-600 Applications for Citizenship with the United States Citizenship and Immigration Services ("USCIS"). Under the governing statute, Plaintiffs are citizens if their father lived in the United States for at least ten years

before their birth, as long as five of those years were after he turned fourteen.  *See* 8 U.S.C. § 1401(a)(7) (1964); 8 U.S.C. § 1401(a)(7) (1970).[1]  On September 13, 2013, USCIS Field Office Director John M. Ramirez denied Plaintiffs' applications.  Plaintiffs did not appeal this denial to the Administrative Appeals Unit of USCIS.

On September 12, 2014, Plaintiffs brought this action to determine their citizenship *de novo*, to declare invalid the denial of their applications, and to compel Defendants (collectively "the government") to grant their applications.   (Doc. 1.)  Plaintiffs assert the Court has jurisdiction pursuant to the Mandamus Act (28 U.S.C. § 1361), Administrative Procedure Act (5 U.S.C. §§ 551 *et seq.*), and 8 U.S.C. § 1503(a).  (*Id.* at ¶¶ 1-3, 41.)  They claim relief pursuant to 8 U.S.C. § 1433, and they invoke the Court's authority under the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202).  (*Id.* at ¶¶ 4-5.)  The government moves to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  (Doc. 14.)

## II.    LEGAL STANDARD

### A.    Lack of Subject Matter Jurisdiction

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge jurisdiction by either (1) attacking jurisdictional allegations as insufficient or (2) contesting the truth of those allegations, usually by introducing evidence outside the pleadings.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  The first, a facial attack, is resolved as it would be under Rule 12(b)(6): accepting the allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are legally sufficient to invoke the court's jurisdiction.  *Id.*   The second, a factual attack, requires the plaintiff to support her jurisdictional

---

[1] The statute in place at the time of Plaintiffs' birth governs.  (Doc. 1 at ¶ 39; Doc. 14 at 2-3.)  However, Plaintiffs cite a more recent version of the statute under which the citizen parent must have lived in the United States for only five years before their birth.  (Doc. 1 at ¶ 38.)

allegations with competent proof, under the same evidentiary standard applied on summary judgment. *Id.* Here, the government contends Plaintiffs' allegations are legally insufficient to invoke federal jurisdiction.

### B.   Failure to State a Claim Upon Which Relief Can Be Granted

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). That does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Dismissal can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need contain only "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, a court may consider evidence on which the complaint necessarily relies if (1) the complaint refers to the document, (2) the document is central to the plaintiff's claim, and (3) no party questions the authenticity of the copy of the document submitted to the court. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## III.   MANDAMUS ACT

Plaintiffs fail to state a claim upon which relief can be granted under the Mandamus Act. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief . . . ." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Here, Plaintiffs have not exhausted all other avenues of relief because "the alternative of a judicial declaration of nationality under 8 U.S.C. § 1503 is more than adequate" to provide all the relief they have sought by mandamus. *Cartier v. Sec'y of State*, 506 F.2d 191, 200 (D.C. Cir. 1974);

*see also S.T. ex rel. Trivedi v. Napolitano*, No. CIV.A. H-12-285, 2012 WL 6048222, at *5 (S.D. Tex. Dec. 5, 2012). Plaintiffs do not dispute the adequacy of 8 U.S.C. § 1503 to vindicate their claims. Therefore Plaintiffs' claims under the Mandamus Act will be dismissed with prejudice.

## IV.   ADMINISTRATIVE PROCEDURE ACT

Plaintiffs similarly fail to state a claim upon which relief can be granted under the Administrative Procedure Act ("APA"). The APA provides judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Where a "substantive statute independently authorizes a private right of action, the APA does not govern the plaintiffs' claims." *Washington Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005). Because 8 U.S.C. § 1503(a) affords Plaintiffs a right of action, the APA does not apply. *See Trivedi*, 2012 WL 6048222, at *4. Therefore Plaintiffs' claims under the APA will be dismissed with prejudice.

## V.   8 U.S.C. § 1433

Plaintiffs' reliance on 8 U.S.C. § 1433 is misplaced. By its terms that statute applies only to a citizen parent's application for naturalization of a minor child, 8 U.S.C. § 1433(a), whereas here, Plaintiffs claim their own citizenship. Perhaps Plaintiffs intended to invoke 8 U.S.C. § 1401(g), which they mistakenly describe as "now repealed and found under 8 U.S.C. § 1433." (Doc. 1 at ¶ 38.) But § 1401(g) does not by itself create a cause of action. It merely lists biographical characteristics sufficient to confer United States citizenship. As such, it is only a definitional statute. *See Hassan v. Holder*, 793 F. Supp. 2d 440, 446-47 (D.D.C. 2011). Therefore, to the extent Plaintiffs rely on § 1433 or § 1401(g) as a cause of action, their claims will be dismissed with prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VI.    8 U.S.C. § 1503(a)**

Plaintiffs' claim under 8 U.S.C. § 1503(a) requires more careful analysis.[2]  Under § 1503(a), a person whose right or privilege is denied by an agency on the ground that he is not a U.S. national may bring an action for declaratory judgment as to his nationality:

> If any person . . . claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States . . . .

Denial of an N-600 citizenship application filed pursuant to 8 U.S.C. § 1452(a) occasions such an action.  *See, e.g.*, *Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 397 (5th Cir. 2007).

However, the action "may be instituted only within five years after the final administrative denial of such right or privilege":

> An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a).

The government argues there was no "final administrative denial" here because Plaintiffs never appealed the denial of their citizenship applications to the Administrative Appeals Unit of USCIS.  This argument mistakes finality for exhaustion, a confusion common in judicial discussions of this and other statutes.  To address the government's argument one must first dispel that confusion.

---

[2] The government says Plaintiffs fail to cite § 1503(a) in their complaint.  This is incorrect.  (*See* Doc. 1 at ¶ 41.)

- 5 -

### A.    Finality versus exhaustion

"The question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable."  *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985).  "While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision . . . ."  *Id.* at 193; *see also Darby v. Cisneros*, 509 U.S. 137, 144 (1993).

Finality and exhaustion both limit judicial intervention in the administrative process, but they do so in different ways.  Finality prevents courts from reviewing agency decisions that have no real effect.  Exhaustion, where required, prevents courts from reviewing agency decisions for which the party did not seek intra-agency review.

These requirements are independent.  For example, a party might attain a definitive agency decision but then fail to file an intra-agency appeal, thereby satisfying finality but not exhaustion.  *See, e.g.*, *Steere Tank Lines, Inc. v. I.C.C.*, 675 F.2d 763, 764 (5th Cir. 1982).  Conversely, a party might attain intra-agency review of a non-definitive agency decision, thereby satisfying exhaustion but not finality.  *See, e.g.*, *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 243 (1980).

Often, application of either requirement yields the same outcome.  As a result, courts "often mingle" the requirements.  *Ticor Title Ins. Co. v. F.T.C.*, 814 F.2d 731, 745 (D.C. Cir. 1987) (opinion of Williams, J.).  But this is a case where the distinction matters.  In § 1503(a), Congress expressly made finality a prerequisite to judicial consideration, but not exhaustion.  Therefore, the government's argument—that finality is lacking because exhaustion was forgone—erroneously conflates two different objections.

**B.      Whether the denial of Plaintiffs' citizenship applications was "final"**

As stated above, § 1503(a) confers jurisdiction on district courts only where there has been a "final administrative denial" of a person's right or privilege.   8 U.S.C. § 1503(a); *see also Fletes-Mora v. Brownell*, 231 F.2d 579, 581 (9th Cir. 1955) (no jurisdiction under § 1503 where plaintiff's complaint failed to allege, among other things, that it was filed within five years after final administrative denial of right or privilege).

Where the statute does not define "final," the "more general doctrine of finality in administrative agency law" applies.   *Indus. Customers of Nw. Utilities v. Bonneville Power Admin*., 408 F.3d 638, 645 (9th Cir. 2005) (citation omitted).   An agency action is "final" when the action (1) is one by which "rights or obligations have been determined" and (2) marks the "consummation" of the agency's decision-making process, i.e., is not "merely tentative or interlocutory."   *See id.* at 646 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

Under this definition, USCIS Field Office Director John M. Ramirez's decision to deny Plaintiffs' citizenship applications became final no later than when the opportunity for higher agency review had passed.   The decision "determined rights or obligations" of American citizenship.   And it marked the "consummation" of USCIS' decision-making process, as evident from the letter USCIS sent to Plaintiffs.   (Doc. 14-1 at 5, 11.)   The letter began with the prominent heading "**DECISION**".   (*Id.* (emphasis in original).)   It then stated, in no uncertain terms: "Upon consideration, it is ordered that the [citizenship application] is denied . . . ."   (*Id.*)   Lest there be any doubt, the letter gave an administrative appeal deadline of 30 days later and stated: "If no appeal is filed within the time allowed, then this decision is final."   (*Id.*)   When no further administrative appeal was filed within 30 days, the decision then became final.

**C.      Whether Plaintiffs' failure to exhaust further administrative remedies bars their action**

The government really means to argue that this action under § 1503(a) is barred, though the agency decision is final, because Plaintiffs allowed the decision to become

final without first appealing to the Administrative Appeals Unit of USCIS.  That is a defense of failure to exhaust required administrative remedies.

A duty to exhaust may arise by statute or by court-made rule known as prudential exhaustion.  If Congress explicitly requires a party to exhaust particular remedies as a prerequisite to judicial consideration, a court "cannot excuse" this statutory requirement. 2 Richard J. Pierce, Jr., Administrative Law Treatise § 15.2, at 1219-20 (5th ed. 2010). However, the court-made exhaustion requirement is "flexible and pragmatic" and "subject to several judge-made exceptions."  *Id.*

Here, although USCIS regulations permit an appeal to the Administrative Appeals Unit before seeking a § 1503(a) citizenship determination, neither Congress nor USCIS requires it.  Nor does the Court.

### 1.    Statutory exhaustion[3]

"Where Congress specifically mandates, exhaustion is required.   But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted), *superseded by statute on other grounds, as recognized in Booth v. Churner*, 532 U.S. 731, 740 (2001). Inquiry into whether Congress has "specifically mandated" exhaustion begins with the statutory text.

### a.    Statutory text

By its terms, § 1503(a) does not impose any exhaustion requirement.  It does even not mention exhaustion.

---

[3] Statutory exhaustion is not necessarily "jurisdictional" exhaustion.  *See* 2 Pierce, Administrative Law Treatise § 15.3, at 1241.  This is because a statute might require exhaustion as a prerequisite to judicial review, but not as a *jurisdictional* prerequisite to judicial review.  *See Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81-82 (2009).  Because there is no statutory exhaustion requirement for § 1503(a) actions, there is no occasion to say whether it would be jurisdictional.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The government would construe the statutory term "final administrative denial" as necessarily requiring exhaustion too.  But the plain text does not support this reading because finality and exhaustion mean different things.  Congress knows the difference.  For example, Congress knows how to require exhaustion apart from finality.  It did so elsewhere in Title 8.  *See* 8 U.S.C. § 1252(d)(1) ("A court may review a *final* order of removal only if . . . the alien has *exhausted* all administrative remedies available to the alien as of right . . . ." (emphases added)).  Congress also knows how *not* to require exhaustion as distinct from finality.  It did so in the APA.  *See* 5 U.S.C. § 704 ("[Unless required by statute or regulation,] agency action otherwise final is *final* for the purposes of this section *whether or not there has been* . . . an application for . . . an *appeal to superior agency authority*." (emphases added)); *Darby v. Cisneros*, 509 U.S. 137, 147 (1993) (interpreting this provision).  Thus, congressional silence with respect to exhaustion under § 1503(a) is not a clear indication of intent to require exhaustion.

Furthermore, in its letter to Plaintiffs, USCIS used the term "final" to mean nearly the opposite of exhaustion.  The letter stated that if Plaintiffs do not timely appeal the denial of their applications—i.e., if remedies are not exhausted—then the decision would be "final."  (Doc. 14-1 at 5, 11.)  Having told Plaintiffs exhaustion is necessary to *avoid* finality, the government cannot now claim exhaustion is necessary *for* finality.  To permit this doublespeak would transform the statutory finality requirement into "a trap for unwary litigants."  *Darby*, 509 U.S. at 147.

**b.**     **Regulatory framework**

The government also argues that agency regulations, 8 C.F.R. § 103.3(a)(1)(i)-(iv), make exhaustion a prerequisite for judicial determination of citizenship under § 1503(a).  Far from it.  The regulations simply make an administrative appeals process available.  The language is explicitly permissive, not mandatory.  *See* 8 C.F.R. § 103.3(a)(1)(ii) (stating decisions "may be appealed").

This regulatory framework is materially identical to the one found in *Young v. Reno* not to require exhaustion of available administrative remedies. 114 F.3d 879 (9th Cir. 1997). There, the petitioner sought court review of agency revocation of immigration visas. *Id.* at 881. The statute conferring district court jurisdiction, 8 U.S.C. § 1329, had no exhaustion requirement. *Id.* at 882. But agency regulations, 8 C.F.R. §§ 205.2, 3.1(b)(5), provided that a petitioner "may appeal" revocation decisions to the intra-agency Board of Immigration Appeals ("BIA"). *Id.* The Ninth Circuit reasoned that "because the regulations do not explicitly require a petitioner to appeal to the BIA prior to seeking judicial review, such intra-agency review is optional." *Id.* The court concluded that the petitioner "need not have sought review by the BIA prior to bringing her action in the district court." *Id.* at 882-83. *Young* governs this case.

### c.     Case law

Despite the lack of any textual basis to require exhaustion, the government argues that courts regularly do interpret § 1503(a) as requiring exhaustion. The government quotes statements from courts in other circuits, but such statements are usually dicta and none is binding or persuasive.

In *United States v. Breyer*, the Third Circuit stated that under the statute's finality requirement, "a federal district court does not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies." 41 F.3d 884, 892 (3d Cir. 1994). But that was dictum. Although the court held that the district court below lacked jurisdiction to consider a citizenship claim, the reason was that the citizenship claim was "separate and distinct from" the case before the district court, not that the claim was unexhausted. *Id.* at 892-93. Moreover, in *Breyer*, unlike here, the citizenship claim was still pending before the agency. *Id.* at 887-88. There was no final agency decision precisely because the applicant was still pursuing additional agency review.

In *Rios-Valenzuela v. Department of Homeland Security*, the Fifth Circuit stated in a footnote that a person "must exhaust the agency procedures" before bringing an action

- 10 -

under § 1503(a).   506 F.3d 393, 397 n.4 (5th Cir. 2007).   But that statement too was dictum.   That court held the district court lacked jurisdiction to consider a citizenship claim under § 1503(a), but the reason was that the citizenship claim arose in connection with a removal proceeding, not that the claim was unexhausted.   *Id.* at 398-99. Moreover, like *Breyer*, *Rios-Valenzeula* is distinguishable on its facts.   There the person claiming citizenship had completed the intra-agency appeals process.   *Id.* at 396.   The quoted footnote was classic dictum, unnecessary under the facts of the case.

Though not cited by the government, the Fourth Circuit in *Johnson v. Whitehead* also stated that § 1503(a) requires exhaustion.   647 F.3d 120, 125 (4th Cir. 2011).   But that statement was dictum as well.   The question before the court was whether a habeas petition could be used to obtain judicial review of a citizenship question that arose in a removal proceeding.   *Id.* at 124.   The court answered that Congress specifically prohibited this use of habeas petitions.   *Id.* (citing 8 U.S.C. § 1252(b)(9)).   The court then asserted that the habeas petition was also barred for failure to exhaust administrative remedies under § 1503(a).   *Id.* at 125.   This passing reference to § 1503(a) was unnecessary to the court's conclusion.   Indeed it was irrelevant, since § 1503(a) by its terms does not apply to citizenship questions arising in removal proceedings.   8 U.S.C. § 1503(a) (providing that "no such action may be instituted in any case if the issue of such person's status as a national of the United States . . . arose by reason of, or in connection with any removal proceeding . . . .").

The government cites no other federal appellate case on this issue, nor does the Court know of any.   Because the pertinent parts of the circuit court opinions mentioned above are dicta, it appears that no circuit court has squarely held that § 1503(a) requires exhaustion.

Next the government cites seven district court cases stating that § 1503(a) requires exhaustion.   But in four of those cases the statements were dicta and played no part in the court's analysis.   *See Headley-Ombler v. Holder*, 985 F. Supp. 2d 379, 384-88 (E.D.N.Y.

- 11 -

2013) (dismissing citizenship claim raised during removal proceeding); *Cineus v. Nepolitano*, No. CV 310-103, 2011 WL 3022565, at *3 (S.D. Ga. June 30, 2011) (dismissing citizenship claim raised only in habeas proceeding); *Fairclough v. Holder*, No. CV 311-013, 2011 WL 2111723, at *1-2 (S.D. Ga. May 26, 2011) (same); *Barham v. United States*, No. CV 99-3983, CR 96-543, 1999 U.S. Dist. LEXIS 18160, at *5-6 (E.D.N.Y. Nov. 30, 1999) (same).

In the three district court decisions containing more than dicta, the reasoning is unpersuasive. First, in *Dung Quoc Nguyen v. United States Department of Homeland Security*, the court offered no analysis in support of its statement that § 1503(a) requires exhaustion. No. 5:09-CV-202-DCB-JMR, 2011 WL 1499216, at *4 (S.D. Miss. Jan. 21, 2011). Instead the court gave two citations. One was to the Fifth Circuit's perfunctory footnote in *Rios-Valenzuela*, described above. *Id.* The other was to a previous district court opinion stating that § 1503(a) requires exhaustion of "all administrative remedies." *Id.* (quoting *Manning v. Rice*, No. 4:06CV464, 2008 WL 2008712, at *4 (E.D. Tex., May 2, 2008)). But that previous opinion involved peculiar facts. There, the plaintiff sought a citizenship declaration because government officials had denied her sister's visa and had confiscated her own driver's license, birth certificate, and military identification card. *See* 2008 WL 2008712, at *1. Before the court decided the matter, the plaintiff received a United States passport and successfully renewed her driver's license. *Id.* at *2, *4. The court concluded: "There is no showing here that Plaintiff was ever denied any right or privilege as contemplated by the statute." *Id.* at *3. Here, by contrast, Plaintiffs' citizenship applications remain denied.

In the second such district court opinion, *Harris v. Department of Homeland Security*, the court noted that § 1503(a) requires a "final administrative denial" and that agency regulations permit an intra-agency appeal. 18 F. Supp. 3d 1349, 1354-55 (S.D. Fla. 2014). But as explained above, the regulations do not make this process mandatory. Next, the court cited a district court opinion that makes no mention of § 1503(a). *Id.* at

1355 (citing *Russell v. INS*, No. 98 C 6132, 1999 WL 675255 (N.D. Ill. Aug. 24, 1999)). Lastly, the court identified practical reasons to require exhaustion.  *Id.*  But practical considerations are relevant to the application of prudential exhaustion (discussed below), not the determination of statutory exhaustion.  *See* 2 Pierce, Administrative Law Treatise § 15.2, at 1219-20.   In any event, the court did not explain how those practical considerations applied to the case before it.

In the third such opinion, *Xia v. Kerry*, the court offered only two case citations in support of its statement that § 1503(a) requires exhaustion.  73 F. Supp. 3d 33, 45 (D.D.C. 2014).  One was to a district court opinion that interpreted § 1503(a) without analysis or citation.  *Id.* (citing *Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010)).  The other was to *Harris*, which is unpersuasive for the reasons stated above.

To sum up, nothing in § 1503(a) or the regulations requires exhaustion, and the few cases stating otherwise are inapposite or unpersuasive.  Therefore, Plaintiffs' failure to appeal to the Administrative Appeals Unit of USCIS does not run afoul of any statutory exhaustion requirement.

### 2.    Prudential exhaustion

The question remains whether Plaintiffs' failure to file an intra-agency appeal bars their claims by operation of the court-made doctrine known as prudential exhaustion. This doctrine allows courts in appropriate circumstances to require exhaustion despite silence of the governing statutes and regulations.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds, as recognized in Booth v. Churner*, 532 U.S. 731, 740 (2001).[4]   In such instances, "sound judicial discretion governs." *Id.*  In exercising this discretion, courts should balance the goals of "protecting

---

[4] In APA cases, however, the statutory text explicitly excludes exhaustion, and courts may not infer higher agency review as a requirement of judicial review. *Darby v. Cisneros*, 509 U.S. 137, 147 (1993).

- 13 -

administrative agency authority" and "promoting judicial efficiency" against "the interest of the individual in retaining prompt access to a federal judicial forum." *Id.* at 145-46. Here, that balance tilts strongly against imposing prudential exhaustion.

### a.   Protecting agency authority

Prudential exhaustion is premised on "the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.* at 145.  Exhaustion also respects the agency's decision-making process by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "frequent and deliberate flouting of administrative processes." *Id.* (citation omitted).  Exhaustion is particularly appropriate where the underlying substantive issue involves the agency's "discretionary power" or "special expertise." *Id.*

Those considerations carry little weight here.  Critically, "deference to Congress' delegation of authority" in this context does not create a preference for the administrative process over the judicial process.  When it comes to citizenship determinations, Congress gave the agency "primary responsibility" only in the sense that the agency makes the first decision.  After that, the final and entire responsibility is solely with the courts.

This point is best illustrated by way of contrast.  When allocating responsibility between courts and agencies, Congress often assigns to the agency the main decision-making role and to the courts only a reviewing role to check whether the agency crossed over its bounds of determining facts and law and of exercising discretion.  In such instances, "the ultimate power of decision remains with the agency and the courts only monitor the agency's performance."  33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice & Procedure: Judicial Review of Administrative Action* § 8330 (2015). The APA is an example of this allocation.  Under the statute, agency action is subject to "judicial review."  5 U.S.C. §§ 702, 704.  On review, courts can set aside an agency

- 14 -

action only if it falls short of certain statutory standards.  5 U.S.C. § 706.  Courts cannot substitute their judgment for that of the agency.  *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1132 (9th Cir. 2010).

For citizenship applications, however, Congress allocated responsibility differently.  USCIS makes the decisions first, *see* 8 U.S.C. § 1452(a), but the courts make the real decisions all over again, *see* 8 U.S.C. § 1503(a).  This allocation charges the courts with an independent and comprehensive role in determining citizenship.  "A suit under section 1503(a) is not one for judicial review of the agency's action.  Rather, section 1503(a) authorizes a *de novo* judicial determination of the status of the plaintiff as a United States national."  *Richards v. Sec'y of State, Dep't of State*, 752 F.2d 1413, 1417 (9th Cir. 1985); *see also Delmore v. Brownell*, 236 F.2d 598, 599 n.1 (3d Cir. 1956) (§ 1503(a) authorizes "trial de novo").  Because § 1503(a) requires a *de novo* determination, the weight and importance of USCIS' initial decision vanish entirely.  Thus, Congress did not make USCIS the "primary" decision-maker on citizenship applications in any substantive sense.  Accordingly, one of the usual reasons for requiring exhaustion—deference to an expressed congressional preference for administrative decision-making—is absent here.

Further, exhaustion is not necessary to prevent "frequent and deliberate flouting" of USCIS' administrative process.  There is no indication that Plaintiffs or other citizenship applicants have abused the process with perfunctory, bad faith applications so they can jump to court to put on a serious case.  It would be against their self-interest to forgo one of two independent chances to prove their citizenship.  *See McKart v. United States*, 395 U.S. 185, 200 (1969) (declining to require exhaustion where parties were not likely to bypass agency procedures "with the thought that their ultimate chances of success in the courts are enhanced thereby").  The courts' ability to see through sham conduct should suffice to defeat any specific instance of bad faith evasion of agency

procedures.  *See McGee v. United States*, 402 U.S. 479, 488 (1971) (requiring exhaustion where "the bypass was deliberate and without excuse").

Finally, the substantive issue in this case does not involve an agency's "discretionary power" or "special expertise."  Whether Plaintiffs are citizens turns on when their father lived in the United States.  Resolving this issue is a matter of routine fact-finding and application of clear statutes.  Federal district courts are just as well equipped for this task as USCIS is.  *Compare McKart*, 395 U.S. at 197-98 (declining to require exhaustion where the substantive issue did "not require any particular expertise" and was "not a matter of discretion") *with McGee*, 402 U.S. at 486 (requiring exhaustion where the substantive issue "depended on the application of expertise by administrative bodies in resolving underlying issues of fact").

### b.      Promoting judicial efficiency

Usually prudential exhaustion "promotes judicial efficiency in at least two ways." *McCarthy*, 503 U.S. at 145.  First, when "an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided."  *Id.*  Second, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context."  *Id.*

These considerations also carry little weight here.  Giving USCIS the "opportunity to correct its own errors" is unlikely to increase efficiency overall.  All appeals to the Administrative Appeals Unit cost administrative and applicant resources.  On appeal, the Appeals Unit might (1) overturn the initial agency decision and grant citizenship, (2) affirm the initial agency denial, or (3) remand for further consideration.  If the Appeals Unit grants citizenship, then resources are spent at the administrative level instead of at the judicial level.  But if the Appeals Unit affirms the initial agency denial, a third round of litigation becomes necessary.  If the Appeals Unit remands, then the applicant may

become a shuttlecock within the agency with no escape in sight—a loathsome prospect that could not happen once the court gives its *de novo* decision.

More fundamentally, the goal of avoiding "judicial controversy" misses the point of § 1503(a), which is to allow applicants to hale USCIS into federal court after it has made an adverse decision.  The statute gives to the citizenship applicant the choice whether to expend more resources in the agency that has denied her claim or to expend those resources in the fresh forum to which she is entitled.

Moreover, exhaustion can "produce a useful record for subsequent judicial consideration" only in cases of judicial review of agency action.  In such cases, a thorough administrative record is useful because the "focal point for judicial review should be the administrative record already in existence."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (interpreting the APA).  As explained above, however, an action under § 1503(a) is not judicial review of agency action, but a *de novo* trial in which new evidence may be presented.  *Richards*, 752 F.2d at 1417; *Delmore*, 236 F.2d at 599 n.1.  Thus, the usual interest in developing an administrative record is absent here.

### c.      Interest of the individual

The interest of the individual applicant cuts entirely against inferring a duty to pursue higher administrative review.   "[F]ederal courts are vested with a virtually unflagging obligation to exercise the jurisdiction given them."  *McCarthy*, 503 U.S. at 146 (citation omitted).  "In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."   *Id.*  "Application of this balancing principle is intensely practical, because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided."  *Id.* (citation omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, the agency has little or no "countervailing institutional interests favoring exhaustion."  As already discussed, exhaustion would not significantly protect agency authority or promote judicial efficiency.

Plaintiffs, on the other hand, have a critical interest in prompt and economical determination of their claim to citizenship.  "[T]he right to acquire American citizenship is a precious one."  *Fedorenko v. United States*, 449 U.S. 490, 505 (1981).  No doubt it is the preciousness of American citizenship that led Congress to accord applicants the rare protection of *de novo* trial in federal court.  The interest in promptly and economically determining citizenship is defeated if applicants are forced to slog through an extra layer of administrative procedure in the name of allowing USCIS to fix its own mistakes.  Such delay is especially unwarranted given that USCIS' mistakes will not matter in a *de novo* trial, where both parties may introduce new evidence.

Further, as explained above, nothing in the statutes, regulations, or USCIS' letter to applicants states that an intra-agency appeal is necessary to a § 1503(a) action.  Thus, to require exhaustion by inference would allow USCIS to spring a trap on the unwary, and even on the wary who read everything Congress and the agency said on the matter.

Therefore, Plaintiffs' failure to appeal to the Administrative Appeals Unit does not violate any prudential exhaustion requirement.  The government's motion to dismiss Plaintiffs' § 1503(a) claims for failure to exhaust administrative remedies must be denied.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 14) is granted to the extent that Plaintiffs' claims under the Mandamus Act, the Administrative Procedure Act, and 8 U.S.C. § 1433 are dismissed with prejudice for failure to state a claim upon which relief can be granted.  The Motion is otherwise denied.

Dated this 9th day of March, 2016.

Neil V. Wake
United States District Judge

- 18 -